No.97-166

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

SHERRY ROBINSON SCHMIDT, Individually and as
Personal Representative of the Estate of Steven
Daniel Schmidt, Deceased,

Plaintiff and Appellant,

v.

STATE OF MONTANA,

Defendant and Respondent

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Broadwater,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas A. Budewitz, Attorney at Law, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Paul D. Johnson,
Assistant Attorney General; Agency Legal Services; Helena, Montana

For Amicus Curiae:

Norman H. Grosfield, Attorney at Law, Helena, Montana
(for Montana Association of Counties)

Submitted on Briefs: November 13, 1997

Decided:    December 15, 1997
Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

The plaintiff, Sherry Robinson Schmidt, filed a complaint against the defendant, State of Montana, in the District Court for the First Judicial District in Broadwater County, in which she alleged that the death of her husband, Steven Daniel Schmidt, was caused during the course of his employment with the State of Montana by the State's wrongful conduct. She sought damages on behalf of his estate and his survivors as a result of his injuries and death. The District Court granted summary judgment to the State based on the exclusive remedy provision of the Workers' Compensation Act. Schmidt appeals. We affirm the judgment of the District Court.

The issue on appeal is whether the District Court erred when it dismissed Sherry Robinson Schmidt's complaint by summary judgment.

## FACTUAL BACKGROUND

Steven Daniel Schmidt died in an accident that occurred on July 21, 1992, while doing maintenance work for the Department of Fish, Wildlife and Parks, a department of the State of Montana. At the time of his death, Steven and a co-employee, John Stoner, were removing bundles of tires which had been connected by a steel cable to form a breakwater in Canyon Ferry Lake near the Silos Campground in Broadwater County. Steven's function was to pull the tires from the water using a tractor provided by his employer, and tow them a short distance to a location from which a recycler could pick them up.

Work had begun on the project the day before Steven's injury and death. The tractor being used was a 1960 Massey-Ferguson Model 90 which had been acquired by Fish, Wildlife and Parks from the State Highway Department the previous winter. Bill Hahn, the maintenance supervisor for Region VIII of Fish, Wildlife and Parks, and Steven's supervisor, had made the decision to use the tractor for the tire removal project and assigned Steven and Stoner to do the work.

On the second day of the project, while Steven was towing a bundle of connected tires from the lake or beach to the pick-up site, the weight of the load caused the front end of the tractor to rise off the ground and eventually turn completely over, pinning Steven beneath the tractor. Steven died at the scene of the accident from the injuries that he sustained.

The Department is insured against claims for workers' compensation by the State Compensation Insurance Fund. Sherry Schmidt filed a claim for benefits based on her husband's injuries and death, and that claim was accepted.

Sherry also filed this action in the District Court to recover common law damages as a result of her husband's death. She alleged that Steven was killed because his supervisor, Bill Hahn, knowing that there was a high probability of injury to him,

deliberately and intentionally directed him to perform work in conscious disregard of that
high probability of injury and, therefore, that the State is liable for damages to Steven's
estate and his survivors.

In answer to Sherry's complaint, the State admitted that Steven was killed during
the course of his employment with the State of Montana, but denied the rest of her
allegations, and affirmatively alleged that since Steven's employer was covered by the
Workers' Compensation Act, the State was not subject to further liability for damages as
a result of his death.

The State moved for summary judgment pursuant to õ 39-71-411, MCA, which
provides that an employee's exclusive remedy for injury or death which occurs during the
course of employment is to pursue those rights provided for by the Workers'
Compensation Act. The State contended that the exception set forth at õ 39-71-413,
MCA, does not apply unless there is an intent by a fellow employee to injure a co-worker
and, in this case, that no such intent had been established.

In response to the State's motion for summary judgment, Sherry contended that
based on the plain language of õ 39-71-413, MCA, the District Court should not require
a specific intent to injure, but should follow the "substantial certainty" rule applied in
other jurisdictions and, in this case, that there was a "substantial certainty" that Steven
would be injured because of the circumstances under which he was required to perform
his work.

Relying on our prior decisions, the District Court concluded that Sherry had not
proven that any employee of the State of Montana had a specific intent to harm Steven
and, therefore, that she had not established sufficient facts to remove her claim from the
exclusive remedy provision of the Workers' Compensation Act. For that reason, the
District Court granted summary judgment to the State of Montana.

On appeal, Sherry contends that the District Court erred by requiring that she
prove a specific intent to injure Steven in order to satisfy the requirements of õ 39-71-
413, MCA. She contends that the plain language of the statute requires only that she
prove that an employee of the State acted intentionally and maliciously and that that
requirement is satisfied by proving that Steven was ordered to work under conditions
which his employer or supervisor knew created a high probability that he would be
injured. She contends that Hahn required Steven to perform his job with inadequate
equipment, without adequate safety devices, or training, and in spite of the fact that he
was unqualified to do the job and, therefore, that Hahn acted intentionally and
maliciously, regardless of the statutory definition of malicious that this Court chooses to
apply. She contends that this Court's prior decisions in Great Western Sugar Co. v.
District Court (1980), 188 Mont. 1, 610 P.2d 717, Noonan v. Spring Creek Forest
Products, Inc. (1985), 216 Mont. 221, 700 P.2d 623, and Blythe v. Radiometer America

(1993), 262 Mont. 464, 866 P.2d 218, misapply the plain language of õ 39-71-413, MCA, and should not be followed.

The State responds that this Court's prior decisions are controlling; that based on those decisions employees or their survivors cannot bring personal injury actions against an employer on the basis of injury sustained during the course of employment unless it can be proven that there was an intent to injure the person on whose behalf the claim is made; and that the undisputed facts establish that there was no intent to injure Steven Schmidt.

### STANDARD OF REVIEW

We review a summary judgment de novo to decide if the district court was correct as a matter of law. See Motarie v. Northern Mont. Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785.

Summary judgment is governed by Rule 56(c), M.R.Civ.P., which provides, in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In Bruner v. Yellowstone County (1995), 272 Mont. 261, 900 P.2d 901, we established the following sequential burdens:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

### DISCUSSION

Did the District Court err when it dismissed Sherry Robinson Schmidt's complaint by summary judgment?

Section 39-71-411, MCA (1991), known as the exclusive remedy section of the Workers' Compensation Act, provides in relevant part as follows:

For all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive. Except as provided in part 5 of this chapter for uninsured employers and except as otherwise provided in the Workers' Compensation Act, an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of such injuries or death. The Workers' Compensation Act binds the employee

himself, and in case of death binds his personal representative and all persons having any right or claim to compensation for his injury or death . . . .

An exception to the exclusive remedy of the Workers' Compensation Act, however, is found at õ 39-71-413, MCA (1991), in the case of injuries caused by intentional and malicious acts or omissions. That section provides as follows:
If an employee receives an injury while performing the duties of his employment and the injury or injuries so received by the employee are caused by the intentional and malicious act or omission of a servant or employee of his employer, then the employee or in case of his death his heirs or personal representatives shall, in addition to the right to receive compensation under the Workers' Compensation Act, have a right to prosecute any cause of action he may have for damages against the servants or employees of his employer causing the injury.

Although the literal language of õ 39-71-413, MCA, does not so provide, we have held that an exception to the exclusive remedy pursuant to õ -413 does not exist unless
it can be shown that the person injuring the employee intended to do so. See Great Western Sugar Co. v. District Court (1980), 188 Mont. 1, 610 P.2d 717.
In Great Western Sugar Co., the plaintiff alleged that he was injured during the course of his employment when he was required by his employer to work with equipment for which he was untrained and unqualified and which the employer knew was extremely hazardous. The District Court refused to dismiss the claim against the plaintiff's employer, but in the exercise of supervisory control, we held that the exclusive remedy
provision of the Workers' Compensation Act could only be avoided by an intentional tort
and that allegations of negligence, no matter how wanton or malicious, are insufficient.
See Great Western Sugar Co., 188 Mont. at 7, 610 P.2d at 720. We held that:
[T]he "intentional harm" which removes an employer from the protection of the exclusivity clause of the Workers' Compensation Act is such harm as it maliciously and specifically directed at an employee, or class of employee out of which such specific intentional harm the employee receives injuries as a proximate result. Any incident involving a lesser degree of intent or general degree of negligence not pointed specifically and directly at the injured employee is barred by the exclusivity clause as a basis for recovery against the employer outside the Workers' Compensation Act.

Great Western Sugar Co., 188 Mont. at 7, 610 P.2d at 720.
In Millers Mutual Insurance Co. v. Strainer (1983), 204 Mont. 162, 663 P.2d 338, a declaratory judgment action to determine rights and liabilities pursuant to a homeowner's policy, we held that the language of õ 39-71-413, MCA, "refers to an intentional act without regard to intending the results of the act" and, therefore, was not
as broad as language in the insured's homeowner's policy which excluded coverage for only that bodily injury which is intended. Millers Mutual Ins., 204 Mont. at 166, 663
P.2d at 340. We also held:
In summary, we hold that section 39-71-413, of the Workers'

Compensation Act, permits the filing of a third-party action where acts of
an employee are intentional irrespective of whether the results of that act
were intended.

Millers Mutual Ins., 204 Mont. at 168, 663 P.2d at 341-42.

However, two years later, in Noonan v. Spring Creek Forest Products,
Inc. (1985), 216 Mont. 221, 700 P.2d 623, we ignored our holding in Millers Mutual
Ins.
and followed our holding in Great Western Sugar Co.  The plaintiff in Noonan, as does
the plaintiff in this case, advocated adoption of the "substantial certainty"
doctrine
pursuant to which an employee alleges sufficient facts to establish the intentional
tort
exception to the exclusivity provision of the Workers' Compensation Act if he or she
can
show that the "employer knows or believes that harm is a 'substantially certain'
consequence of the unsafe workplace" and allows hazards to exist anyway.  Noonan, 216
Mont. at 224, 700 P.2d at 625.  Even though we agreed that the employer in Noonan had
operated a hazardous and dangerous work place which resulted in an unusual number of
employee injuries, we reaffirmed that a specific intent to injure the employee was
necessary.  We declined to adopt the "substantial certainty" doctrine.  See Noonan,
216
Mont. at 225-26, 700 P.2d at 626.

More recently, in Blythe v. Radiometer America (1993), 262 Mont. 464, 866 P.2d
218, this Court, by a 4-3 majority, reaffirmed its adherence to the rule established
in
Great Western Sugar Co. and followed in Noonan.  The majority again granted summary
judgment to the employer where no proof had been shown that an intent to harm was
directed at the specific employee who was injured.  In addition, we held that the
type of
malice necessary to satisfy õ 39-71-413, MCA, was that malice described by õ 1-1-
204(3), MCA, which defines malice as "a wish to vex, annoy, or injure another
person,"
and not actual malice as defined in õ 27-1-221(2), MCA, which provides that a person
acts with malice:
[I]f [he] has knowledge of facts or intentionally disregards facts that create
a high probability of injury to the plaintiff and:
(a) deliberately proceeds to act in conscious or intentional disregard
of the high probability of injury to the plaintiff; or
(b) deliberately proceeds to act with indifference to the high
probability of injury to the plaintiff.

In dissent to the majority opinion in Blythe, the author of this opinion
concluded
that the plain language of õ 39-71-413, MCA, did not require a specific intent to
injure
the employee and that it was more reasonable and logical to apply that statutory
definition
of malice found at õ 27-1-221(2), MCA, and that Millers Mutual Ins., not Great
Western
Sugar Co. or Noonan, more accurately applied the language of õ -413 and should be
followed in that case.  See Blythe, 262 Mont. at 479-80, 866 P.2d at 228

(Trieweiler, J., dissenting).

Sherry, likewise, contends that the plain language of õ -413, and our decision in Millers Mutual Ins., allows recovery by an injured employee against his or her employer where the acts of a fellow employee are intentional, irrespective of whether the results were intended. She contends that it makes no difference whether we use the definition of malice provided for in õ 27-1-221(2), MCA, or that found at õ 1-1-204(3), MCA, because the latter also defines malice as "an intent to do a wrongful act" and that that requirement was satisfied in this case by the employer's violation of õõ 50-71-201 (2) and -203(4), MCA, of the "Montana Safety Act" which require the employer to provide and require "the use of health and safety devices" and "do any other thing reasonably necessary to protect the life, health, and safety of employees."

Without attempting to reconcile the inconsistencies in our prior decisions, and to further reconcile those decisions with the plain language of õ 39-71-413, MCA, we reaffirm our commitment to at least that part of our decision in Great Western Sugar Co. which held that allegations of negligence, no matter how wanton, are insufficient to avoid the exclusive remedy of the Workers' Compensation Act. We conclude, based on the undisputed facts established in this case, that Sherry has not established that an employee or agent of the State of Montana committed an intentional act with malice, which caused injuries to Steven. We arrive at that conclusion regardless of whether we apply the definition of malice found at õ 1-1-204(3), MCA, or that found at õ 27-1-221, MCA.

Our conclusion is based on the following summary of the facts which were established in this case:

Hahn, Steven's supervisor, arrived at the process for removal of the tires from Canyon Ferry Lake after consultation with Steven and his co-worker, John Stoner. He made the decision to use the tractor that was being used because it was one of the better tractors that the Department owned and both Steven and Stoner had operated it before and were familiar with its operation. He selected Steven and Stoner because they were his most competent employees and worked well together.

Hahn had no prior frame of reference for how to do the job and sent Steven to the job with instructions to ease into it and see how things went. There were no standard operating procedures for this type of project. He also told both employees to ease into the job and if they ran into a problem to quit and let him know about the problem. He testified that he assumed the tractor was adequately equipped and did not foresee any

serious hazard from the activity in which the employees would be engaged.

When Hahn visited with Steven the morning of the accident he was told by Steven that things were going well and he was having no problems. Neither Steven nor Stoner raised any safety concerns with him during the previous day when he was at the job site. He testified that either employee was free to advise him if things had not been working to their satisfaction, and that they had the option of changing the operation in any way that suited them. Furthermore, if either worker had felt and expressed that they needed additional equipment, he would have done something to procure the equipment.

Stoner, who was Steven's fellow employee and the only eye witness to the events which preceded Steven's death, confirmed Hahn's version of events. He felt that the tractor selected for performance of the task was the safest one available. He testified that it was Steven's decision to operate the tractor; that Steven was capable of operating the tractor; and that it was Steven who attached to the tractor the chain which was being used. He testified that Steven was performing the job the way he wanted to, and that when the tractor began to tip backward, Steven froze, in spite of Stoner's instructions to release the clutch or to jump.

Stoner testified that based on his prior observations of Steven operating equipment, he had no concern about him operating the tractor on which he was injured, that he thought he had done a fine job of operating the tractor, and that prior to the accident Steven did not appear to be having any problems with the project he was being asked to perform. Neither did Steven express any concerns about the safety of the tractor or the equipment provided with it prior to his accident. When he left the work site the day before, he stated to Stoner that he thought they had a good system operating and would get a lot done the next day.

In spite of this evidence, Sherry contends that Hahn acted intentionally and maliciously because he knew the tractor was inadequate for the job to which it had been assigned; because Hahn violated the previously mentioned provisions of the "Montana Safety Act"; and because the Department of Labor issued a safety order following the accident which criticized the Department of Fish, Wildlife and Parks for failing to adequately train its employees in the recognition of unsafe conditions and take other safety precautions to avoid the accident. However, Hahn's previous advice to Steven to release the clutch if the front end began to rise up on the tractor does not establish that he knew the tractor was inadequate for its purpose and maliciously required that Steven use it anyway. Furthermore, assuming a violation of the statutes relied on by Sherry and the omissions noted by the Department of Labor, those violations and omissions would,

at most, constitute negligence and not serve as the basis for an intentional tort. For these
reasons, we conclude that Sherry has not proven that the State of Montana, through an
agent or employee, committed any intentional or malicious act which caused injury to
Steven during the course of his employment.  Therefore, we conclude that Sherry
Schmidt's complaint is barred by õ 39-71-411, MCA, the exclusivity remedy provision
of the Workers' Compensation Act.

We therefore affirm the judgment of the District Court.


/S/  TERRY N. TRIEWEILER


We Concur:

/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  WILLIAM E. HUNT, SR.
/S/  W. WILLIAM LEAPHART