No. 97-234

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 187

KAREN CALCATERRA, individually

and as the Personal Representative of the

Estate of Carl J. Calcaterra, Deceased,

Plaintiff and Appellant,

v.

MONTANA RESOURCES,

Defendant and Respondent.

No

APPEAL FROM: District Court of the Second Judicial District,

In and for the County of Silver Bow,

The Honorable John W. Whelan, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Bernard J. "Ben" Everett; Knight, Dahood, McLean & Everett,

Anaconda, Montana

For Respondent:

Ronald B. MacDonald, Paul N. Tranel; Datsopoulos, MacDonald &

Lind, Missoula, Montana

Submitted on Briefs: April 9, 1998


Decided: July 29, 1998

Filed:


_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.


¶ **Karen Calcaterra (Karen) appeals from the judgment entered by the Second Judicial District Court, Silver Bow County, on its order granting the motion for summary judgment filed by Montana Resources. We affirm.**

¶ **The issue on appeal is whether the District Court erred in granting summary judgment to Montana Resources on the basis that Karen's claims are barred by the exclusivity provision of Montana's Workers' Compensation Act.**

BACKGROUND

¶ **Carl J. Calcaterra (Carl) was employed by Montana Resources as a maintenance**

technician at its Continental Mine. When Carl reported to work on the morning of June 9, 1995, he and his fellow employee Wayne Wenger (Wenger) received a work assignment from temporary foreman Don Gates (Gates). The assignment was to repair a hinge pin keeper on a Wabco 170-D haul truck which, at the time, was located at the mine's crusher apron. Carl and Wenger proceeded to the crusher apron where they temporarily replaced the damaged hinge pin so the haul truck could dump its load. Because it recently had been raining and was muddy outside, they moved the haul truck into the shop to complete the repairs. They did not wash the truck before beginning the repairs and, as a result, the truck's undercarriage and tires were covered with slippery mud.

¶ The tires on a Wabco 170-D haul truck measure 10 feet in diameter and the hinge pin keeper is situated 12 inches above the rear tires. Thus, it was necessary for Carl and Wenger to be elevated in order to repair the hinge pin keeper. Rather than using the scaffolding that was available to shop workers for such tasks, Carl and Wenger elected to use ladders to reach the hinge pin keeper. Carl leaned a 10-foot ladder against the haul truck's right suspension cylinder and an 8-foot ladder was positioned to the left of the 10-foot ladder. Neither ladder was secured in any manner. Carl climbed the 10-foot ladder to begin cutting away the damaged hinge pin keeper. Employee Lonnie Hoppe (Hoppe) climbed the 8-foot ladder to assist Carl while Wenger used a forklift to raise the haul truck's bed so Carl could access the hinge pin keeper. Neither Carl nor Hoppe used safety belts and lanyards to secure themselves while on the ladders.

¶ After Hoppe assisted Carl with removing the damaged hinge pin keeper and installing a new one, he returned to his other work. The new hinge pin keeper did not fit properly, however, and Carl descended from the ladder to locate Gates for assistance. Gates climbed the 10-foot ladder to inspect the repairs Carl was making, suggested how Carl should complete the repairs, descended from the ladder and left the area. Carl again climbed the 10-foot ladder to continue his work.

¶ By this time, Wenger had moved around the other side of the haul truck and did not see the subsequent events; nor were there any other witnesses to the accident. Wenger heard the ladder rattle and then heard a "thump." When Wenger came back around the side of the haul truck, he saw Carl lying unconscious on the floor. Carl apparently had fallen from the ladder or had slipped when moving from the ladder to the muddy tire of the haul truck in an attempt to get closer to the hinge pin

keeper. Wenger summoned help and Hoppe administered first aid until Carl was taken by ambulance to St. James Community Hospital. Carl never regained consciousness and he died on June 13, 1995.

¶ Karen, Carl's wife and the personal representative of his estate, brought wrongful death and survivorship actions against Montana Resources requesting damages as a result of Carl's injuries and death. She alleged in her complaint that Montana Resources had violated federal safety regulations by directing Carl to perform work on an unsecured ladder without a safety belt and lanyard and that Montana Resources had intentionally and maliciously caused Carl's injuries and death. Montana Resources responded with a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), M.R.Civ.P., or, in the alternative, for summary judgment pursuant to Rule 56, M.R.Civ.P. It asserted that Karen's claims were barred by § 39-71-411, MCA, because Montana's Workers' Compensation Act (the Act) was the exclusive remedy for Carl's injuries and death, and that § 39-71-413, MCA, which provides an exception to the Act's exclusivity provision, was inapplicable. The District Court denied Montana Resources' motion to dismiss, but did not rule on the alternative motion for summary judgment.

¶ After answering the complaint, Montana Resources renewed its motion for summary judgment, again asserting that Karen's claims were barred by the Act's exclusivity provision. Karen opposed the motion and oral arguments were heard. Thereafter, the District Court granted summary judgment to Montana Resources and entered judgment accordingly. Karen appeals.

## STANDARD OF REVIEW

¶ We review a district court's grant or denial of a motion for summary judgment *de novo* using the same Rule 56, M.R.Civ.P., criteria applied by the district court. Montana Metal Buildings v. Shapiro (1997), 283 Mont. 471, 474, 942 P.2d 694, 696 (citing Clark v. Eagle Systems, Inc. (1996), 279 Mont. 279, 283, 927 P.2d 995, 997). Rule 56(c), M.R.Civ.P., provides that

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the initial burden of establishing the absence of any genuine issue of material fact which would allow the opposing party to recover and entitlement to judgment as a matter of law. Montana Metal Buildings, 283 Mont. at 474, 942 P.2d at 696. If the moving party meets this burden, the party opposing the motion must come forward with material and substantial evidence which raises a genuine issue of material fact. Montana Metal Buildings, 283 Mont. at 474, 942 P.2d at 696. Summary judgment is an extreme remedy which should never be substituted for a trial on the merits if there are genuine issues of material fact and all reasonable inferences which may be drawn from the evidence presented should be drawn in favor of the nonmoving party. Montana Metal Buildings, 283 Mont. at 474, 942 P.2d at 696.

## DISCUSSION

¶ **Did the District Court err in granting summary judgment to Montana Resources on the basis that Karen's claims are barred by the exclusivity provision of the Act?**

¶ **The concept that the Act is the exclusive remedy for an employee who is injured or killed in the scope of his or her employment has its genesis in Article II, Section 16 of the Montana Constitution, which provides, in part, as follows:**

> Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state.

This constitutional provision is implemented through § 39-71-411, MCA, which provides generally that the Act is the exclusive remedy for injury to or death of an employee covered by the Act.

> For all employments covered under the . . . Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive. Except as provided in part 5 of this chapter for uninsured employers and except as otherwise provided in the . . . Act, an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the . . . Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of such injuries or death. The . . . Act binds the employee himself, and in case of death binds his personal representative and all persons having any right or claim to compensation for his injury or death, as well as the employer and the servants and employees of such employer and those conducting his business during liquidation, bankruptcy, or insolvency.

Section 39-71-411, MCA. An exception to the general exclusivity of the Act is available, however, when an employee is injured as the result of an intentional and malicious act or omission.

> If an employee receives an injury while performing the duties of his employment and the injury or injuries so received by the employee are caused by the intentional and malicious act or omission of a servant or employee of his employer, then the employee or in case of his death his heirs or personal representatives shall, in addition to the right to receive compensation under the . . . Act, have a right to prosecute any cause of action he may have for damages against the servants or employees of his employer causing the injury.

Section 39-71-413, MCA. While the language in § 39-71-413, MCA, provides for a cause of action only against a fellow employee or other servant of the employer who intentionally and maliciously injures an employee, we have held that such an action may be brought against the employer as well. See Sitzman v. Shumaker (1986), 221 Mont. 304, 307-08, 718 P.2d 657, 659.

¶ **The District Court determined that, while the evidence presented may have established gross negligence or the existence of a dangerous workplace, it did not raise a genuine issue of material fact that Montana Resources acted with intent and malice to harm Carl which would bring Karen's claims within the § 39-71-413, MCA,**

exception to the Act's exclusivity provision. It concluded, as a result, that Montana Resources was entitled to summary judgment as a matter of law. Relying primarily on Lockwood v. W.R. Grace & Co. (1995), 272 Mont. 202, 900 P.2d 314, Karen contends that the District Court erred because the evidence that Montana Resources' foreman Gates directed Carl to perform work under unsafe conditions, in violation of several federal safety regulations, and that Gates himself previously had fallen and been injured under nearly identical circumstances raised genuine issues of material fact regarding Montana Resources' malice and intent to harm Carl which, if proved at trial, would bring her claims within the purview of § 39-71-413, MCA.

¶ Before addressing Karen's contention that genuine issues of material fact exist which bring this action within the exception to the Act's exclusive remedy provision, we set forth the principles which control when allegations--or, as here, evidence--are and are not sufficient to avoid the exclusivity provision and bring an action within § 39-71-413, MCA. As discussed above, an exception to the Act's exclusivity provision is available when an employee is injured by an "intentional and malicious act or omission . . . ." Section 39-71-413, MCA. We recently observed that some of our prior decisions interpreting § 39-71-413, MCA, are inconsistent and clarified several principles relating thereto. See Schmidt v. State (Mont. 1997), 951 P.2d 23, 27-28, 54 St.Rep. 1321, 1324. Specifically, we "reaffirm[ed] our commitment to at least that part of our decision in *Great Western Sugar Co.* [(1980), 188 Mont. 1, 610 P.2d 717] which held that allegations of negligence, no matter how wanton, are insufficient to avoid the exclusive remedy of the Workers' Compensation Act." Schmidt, 951 P.2d at 28, 54 St.Rep. at 1324. We indicated that a plaintiff attempting to avoid the Act's exclusivity must establish "an intentional act with malice" which caused the injuries at issue. Schmidt, 951 P.2d at 28, 54 St.Rep. at 1324. Similarly, an employer's violation of safety statutes or regulations is insufficient to avoid exclusivity because such violations "at most, constitute negligence and [do] not serve as the basis for an intentional tort." Schmidt, 951 P.2d at 29, 54 St.Rep. at 1325. Even knowledge of a high degree of risk to an employee working under dangerous conditions does not establish, by itself, the intentional act needed to avoid exclusivity. See Lockwood, 272 Mont. at 209-10, 900 P.2d at 318-19.

¶ Notwithstanding these principles which govern allegations or evidence insufficient to avoid the exclusivity provision, however, it is clear that § 39-71-413, MCA, provides an exception to that bar for injuries during employment which "are caused by the intentional . . . act or omission" of a fellow employee. In that regard, we have

held that allegations or evidence that an employer knew its acts created a high degree of harm to an employee are sufficient to meet the intentional act requirement of § 39-71-413, MCA. See Lockwood, 272 Mont. at 210, 900 P.2d at 319. Under the Lockwood approach, however, an employee must allege and establish that the employer had actual knowledge that the employee was being harmed; allegations such as that an employer "had ample reason to know" of the harm being experienced are insufficient. Lockwood, 272 Mont. at 209, 900 P.2d at 318.

¶ With these principles in mind, we turn to the evidence presented by Karen in opposition to Montana Resources' motion for summary judgment and her arguments that the evidence raised genuine issues of material fact regarding Montana Resources' intent to harm Carl. Karen first argues that Montana Resources acted with malice and intent to harm based on the evidence that, through Gates, it directed Carl to perform work 10 feet off the ground while standing on an unsecured ladder and without the appropriate safety belt and lanyard to protect him. We note at the outset that the record does not support her characterization of the evidence in this regard.

¶ The evidence before the District Court on the motion for summary judgment consisted of the affidavits of Gates and Ray Tilman, the Montana Resources employee who investigated the circumstances of the accident, as well as the report of the federal Mine Safety and Health Administration (MSHA) inspector who investigated the accident. Nothing in these documents supports Karen's assertion that Carl was directed to use an unsecured ladder rather than the available scaffolding or directed not use the safety belt and lanyard. Gates only directed Carl and Wenger to repair the hinge pin keeper. The manner in which they made the repair was left up to them. Neither Montana Resources nor Gates "directed" Carl to complete the repairs using unsafe equipment or techniques.

¶ Karen relies on Lockwood for the proposition that intent to injure an employee means intent that the employee should be exposed to the harm. She argues from that premise that, by allowing Carl to work on an unsecured ladder without a safety belt and lanyard, Montana Resources intended that Carl be exposed to the harm of serious injury or death. Lockwood does not support Karen's argument.

¶ The employee in Lockwood died of lung cancer allegedly caused by daily exposure to vermiculite and asbestos dust at his workplace. Based on an allegation that the

employer knew its acts of exposing the employee to vermiculite and asbestos dust actually created harm to the employee, we concluded that the complaint was sufficient to avoid the Act's exclusivity provision. In so concluding, we stated that

> intent to injure does not mean desire to injure; it means that the employer intended that the employee should undergo the injury--the exposure to the harm--of which the employer knew on a daily basis.

Lockwood, 272 Mont. at 210, 900 P.2d at 319 (citation omitted). Here, Carl was not exposed to harm in the Lockwood sense that he definitely would be injured as a result of the conditions under which he was working. Rather, he was exposed to the *risk* of harm if he should fall from the ladder and, in Lockwood, we concluded that a similar allegation that the employer knew its acts created a high degree of risk to the employee was insufficient to allege intentional harm directed at the employee. Lockwood, 272 Mont. at 209-10, 900 P.2d at 318-19. Thus, Montana Resources' knowledge that an employee working 10 feet above the floor on an unsecured ladder without a safety belt and lanyard was risking injury is insufficient to raise a genuine issue of material fact that Montana Resources directed intentional harm at Carl.

¶ Karen also argues that Montana Resources' intent to harm Carl is evidenced by Gates' personal knowledge that Carl was using equipment in an unsafe manner--established by Gates himself climbing the ladder to inspect Carl's work--and failure to instruct Carl to use the available scaffolding instead of the unsecured ladder. She asserts that, because Gates had been injured in a fall under nearly identical circumstances several years prior to Carl's accident, which resulted in the design and construction of the scaffolding that Carl did not use, Gates had actual knowledge that Carl was being exposed to the harm of falling off the ladder. Thus, according to Karen, Gates' actual knowledge of the hazard, combined with his failure to instruct Carl to use the scaffolding or, at least, a safety belt and lanyard, equates to specific intent to harm Carl.

¶ Again, Karen's evidence in this regard establishes only negligence--perhaps even wanton negligence--rather than an intentional and malicious act by Gates which caused Carl's injuries and death. Negligence, even wanton negligence, is insufficient to avoid the exclusive remedy of the Act. Schmidt, 951 P.2d at 28, 54 St.Rep. at 1324.

¶ **Finally, relying on the fact that the MSHA cited and fined Montana Resources for violations of two federal regulations promulgated under the Mine Safety and Health Act resulting from the circumstances of Carl's accident, Karen argues that these violations are sufficient to raise a genuine issue of material fact regarding an intentional and malicious act by Montana Resources which caused Carl's injuries and death under § 39-71-413, MCA. As discussed above, however, violations of safety statutes or regulations constitute, at most, negligence and do not serve as the basis for an intentional tort. <u>Schmidt</u>, 951 P.2d at 29, 54 St.Rep. at 1325.**

¶ **We conclude that Karen failed to raise a genuine issue of material fact regarding whether Montana Resources caused Carl's injuries and death via an intentional and malicious act or omission. We hold, therefore, that the District Court did not err in granting summary judgment to Montana Resources on the basis that Karen's claims are barred by the exclusivity provision of the Act.**

¶ **Affirmed.**

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

No