No. 98-630

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT

PETER R. SHERNER and
DEBORAH SHERNER

       Plaintiffs and Appellants,

  v.

CONOCO, INC.,

       Defendant and Respondent.

**FILED**

FEB 2 9 2000

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:
             Gene R. Jarussi, Jarussi & Bishop, Billings, Montana; Thomas E.
             Boland, Jeremiah C. Lynch, Great Falls, Montana

       For Respondent:
             David A. Veeder, Jolane D. Veeder, Veeder Law Firm, Billings,
             Montana

       For Amici:
             Lawrence A. Anderson, Great Falls, Montana; (Montana Trial Lawyers
             Association); Gary L. Graham, Garlington, Lohn & Robinson, Missoula,
             Montana (Montana Defense Trial Lawyers); Peter F. Habein, Crowley,
             Haughey, Hanson, Toole & Dietrich, Billings, Montana ( Farmers Insurance
             Exchange)

                    Heard: November 30, 1999
                    Submitted: December 2, 1999
                    Decided: February 29, 2000

Filed:

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1    Peter Sherner (Sherner) appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, granting Respondent Conoco, Inc. (Conoco) summary judgment. We reverse and remand.

¶2    The two issues on appeal are:

     I   What standard should be used to determine whether an employer's act or omission is "intentional and malicious," thereby allowing an injured worker to bring a tort action against his employer under § 39-71-413, MCA?

     II   Whether it was error for the District Court to grant summary judgment in favor of Conoco.

## FACTUAL BACKGROUND

¶3    In 1995, Sherner was an employee at the Conoco Refinery in Billings, Montana. On August 7, a leak was discovered in a nozzle of the Fluidized Catalytic Cracker (FCC) Unit. The FCC Unit makes gasoline and light cycle oil which is processed into diesel fuel. John Gott, a member of Conoco management, elected to repair the nozzle leak and at the same time, perform work inside one of the FCC vessels known as W-58. In order to bring the FCC Unit down for repair, the refinery operations crew must follow a complex and detailed shutdown procedure. Part of this procedure involves isolating the FCC Unit from other units of the Refinery which are not going to be repaired. The FCC Unit is then steamed out in order to remove hazardous gasses.

¶4     Once the operations crew completes this procedure, the FCC Unit is turned over to a "blind" foreman who establishes that valves are closed and checks for the existence of gas using a sensor. The blind foreman may then authorize workers to begin the process of "blinding" the FCC Unit. Blinding involves inserting flat metal plates into openings in the pipes to ensure that gas such as hydrogen sulfide ($H_2S$) does not move through the pipes to the FCC Unit. Breathing $H_2S$ gas results in poisoning and even in very low concentrations causes headaches and nausea.

¶5     Two known sources of $H_2S$ are connected to the FCC Unit; the gas recovery plant (GRP), and a desulferizer known as HDS #1. The GRP was idled but not depressurized during the August 1995 shutdown and repair and the HDS #1 was still operating under pressure. The tendency in such a situation is for gas under pressure in a closed space to move toward an area with less pressure, i.e., from the pressurized GRP Unit and the HDS #1 through the pipes to the non-pressurized FCC Unit.

¶6     According to Conoco rules no work, including blinding, could begin until the blind foreman signed a work authorization permit. It is also the blind foreman's responsibility to walk through the Unit to check valves and test for the presence of gas. Blind foreman Wayne Lipp (Lipp), tested the overhead line on W-58 and found it free of $H_2S$. According to Conoco policy, blinding was to begin within one hour after the work permit was issued, however in this case it did not. Around this time, Gott and other managers smelled a sour

3

gas odor in the vicinity of W-58. Management did not stop work on the shutdown as a result of this odor.

¶7 Approximately 2 hours after Lipp performed the gas sniff test at the top of W-58, he signed a work authorization permit allowing workers to begin installing blinds. Lipp assigned Sherner and another worker to install the blind on the overhead line leading to the W-58 tower (a vessel which is part of the FCC Unit). Sherner was exposed to $H_2S$ gas while he was installing the blind and was seriously injured. Conoco's investigation found that a valve on a line from the HDS #1 did not seal, allowing $H_2S$ gas to flow through the overhead line to where Sherner was working. An OSHA investigation resulted in a number of citations being issued against Conoco for violating OSHA regulations.

¶8 Sherner alleged that Conoco and its employees were liable for his injuries by reason of their intentional and malicious acts and/or omissions. Sherner also alleged that Conoco's parent company E.I. Du Pont De Nemours and Company (Du Pont) was liable for his injuries by reason of its negligence. Sherner's wife, Debra, also joined in the case seeking to recover for her loss of consortium by reason of the injury to her husband. All four defendants in the case moved for summary judgment. The District Court granted the motions in full and entered judgment in the Defendants' favor. It is from the judgment in favor of Conoco that Sherner appeals.

## STANDARD OF REVIEW

¶9 Summary judgment is an extreme remedy which should not be a substitute for a trial on the merits if a material factual controversy exists. *Montana Metal Buildings, Inc. v. Shapiro* (1997), 283 Mont. 471, 474, 942 P.2d 694, 696. Moreover, all reasonable inferences which can be drawn from the evidence presented should be drawn in favor of the nonmoving party. *Montana Metal Buildings*, 283 Mont. at 474, 942 P.2d at 696.

¶10 Our standard of review on appeal from summary judgment rulings is de novo. *See Motarie v. Northern Montana Joint Refuse Disposal Dist.* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. *Bruner*, 272 Mont. at 264, 900 P.2d at 903. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred. *Bruner*, 272 Mont. at 264-65, 900 P.2d at 903.

¶11 I What standard should be used to determine whether an employer's act or omission is "intentional and malicious," thereby allowing an injured worker to bring a tort action against his employer under § 39-71-413, MCA?

¶12 Sherner claims that the District Court erred when it ruled that his tort claim against Conoco was barred by the exclusive remedy provision of § 39-71-411, MCA. The District Court, citing our decision in *Calcaterra v. Montana Resources,* 1998 MT 187, ¶ 14, 289 Mont. 424, ¶ 14, 962 P.2d 590, ¶ 14, concluded that the law required Sherner to "allege and establish that the employer had actual knowledge that the employee was being harmed" in order to prove that the acts were malicious (emphasis original). The District Court then found that the facts were "insufficient to raise a genuine issue of material fact that Conoco directed intentional harm" at Sherner.

¶13 Sherner, however, contends that the District Court erred by applying the wrong standard to the facts of his case. He insists that when looking at the plain language of § 39-71-413, MCA, the facts, viewed in the light most favorable to him, with all reasonable inferences drawn in his favor, show that Conoco intentionally committed certain acts or omissions with malice which resulted in his injury. Sherner alleges that the facts surrounding the shutdown and accident showed that "acts and omissions were done intentionally in order to minimize shutdown time and the resulting financial losses." He further asserts that contrary to the District Court's finding, the plain language of § 39-71-413, MCA, does not require an injured worker prove an employer intentionally harmed him but only that he prove the act or omission which caused the injury was intentional and malicious. Sherner insists that if we apply the appropriate standard for an "intentional and malicious act or omission" it is clear that he is entitled to present his claim to a jury.

¶14 Sherner bases his argument on the allegation that this Court's interpretations of the phrase "intentional and malicious act or omission" have been inconsistent and require clarification. He contends that we should reverse those cases in which we have held that a worker must show an intent to harm/injure on the part of the employer as outdated and inconsistent with the legislative mandate embodied in § 39-71-413, MCA. Sherner claims such inconsistencies have arisen because this Court has not followed rules of statutory construction and recognized the impact of the 1973 statutory changes in the Act on then-existing case law.

¶15 Conoco responds that Sherner is precluded from arguing that this Court should adopt a new standard for determining whether an employer's act or omission is "intentional and malicious," because he failed to ask the District Court to apply a legal standard other than that already in existence. Sherner, however, insists that he did in fact preserve this issue for appeal by stating in his Brief in Opposition to Conoco's Motion for Summary Judgment; "evidence that an employer knew its acts created a high degree of harm to an employee or class of employees is sufficient to meet the intentional act requirement of § 39-71-413, MCA." Setting out the full definition of malice provided at § 1-1-204(3), MCA, Sherner stated, "[m]alice is implied where intentional acts are committed without justifiable excuse, privilege or defense. . . [and] can be found where the acts are intentional even though the consequences are not. . . ." We conclude that Sherner sufficiently raised in District Court the issue of the proper standard for determining whether an employer's act or omission is

"intentional and malicious," under § 39-71-413, MCA, to allow this Court to address this issue on appeal.

¶16   It is Conoco's assertion that even if we address Sherner's argument on appeal, we should not overrule our prior precedent. It contends Sherner's request for this Court to reexamine our prior case law, and reverse *Great Western Sugar Co. v. District Court* (1980), 188 Mont. 1, 610 P.2d 717, and its progeny, is unnecessary because we have already overruled part of *Great Western Sugar Co.* and have recently clarified and refined its principles in *Schmidt v. State* (1997), 286 Mont. 98, 951 P.2d 23, and *Calcaterra*.

## DISCUSSION

¶17   We begin our discussion by providing some background on the Workers' Compensation Act. The purpose of the Act is to protect both the employer and the employee by incorporating a *quid pro quo* for negligent acts by the employer. The employer is given immunity from suit by an employee who is injured on the job in return for relinquishing his common law defenses. The employee is assured of compensation for his injuries, but foregoes legal recourse against his employer. *See Sitzman v. Schumaker* (1986), 221 Mont. 304, 307-08, 718 P.2d 657, 659.

¶18   The concept that the Act is the exclusive remedy for an employee who is injured or killed in the scope of his or her employment has its origin in Article II, Section 16 of the Montana Constitution, which provides;

> [c]ourts of justice shall be open to every person, and speedy remedy afforded
> for every injury of person, property, or character. No person shall be deprived

8

of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state.

Art. II, Sec. 16, Mont. Const.

¶19 This constitutional provision is implemented through § 39-71-411, MCA, which provides generally that the Act is the exclusive remedy for injury to or death of an employee covered by the Act.

> [A]n employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of such injuries or death.

Section 39-71-411, MCA.

¶20 In *Enberg v. Anaconda Co.* (1971), 158 Mont. 135, 489 P.2d 1036, we addressed the exclusive remedy rule, holding that where plaintiff's complaint did not allege intentional injury by the defendant employer, any claim for relief was barred by the exclusive remedy provisions of the Workers' Compensation statute. *Enberg*, 158 Mont. at 137-38, 489 P.2d at 1037. After our holding in *Enberg*, the Montana Legislature repealed 92-204, RCM 1947 and enacted 92-204.1 RCM 1947, making a significant change by providing that a worker could sue a fellow employee if the worker's injuries were caused by the "intentional and malicious act or omission" of a co-worker. 92-204.1 RCM 1947 (today codified at § 39-71-413, MCA). Section 413's exclusive remedy exception provides;

> [i]f an employee receives an injury while performing the duties of his employment and the injury or injuries so received by the employee are caused

by the *intentional and malicious act or omission* of a servant or employee of his employer, then the employee or in case of his death his heirs or personal representatives shall, in addition to the right to receive compensation under the Workers' Compensation Act, have a right to prosecute any cause of action he may have for damages against the servants or employees of his employer causing the injury.

Section 39-71-413, MCA, (emphasis added).

¶21 Despite this legislative change, we held that where a complaint fell short of alleging an intentional tort, it did not state a claim that would override the exclusivity provision of the statute. *Great Western Sugar Co.*, 188 Mont. at 6, 610 P.2d at 719. It is in that holding Sherner alleges this Court erred by focusing not on the "intentional act or omission" as provided in § 413, but on the harm which results from the intentional act. We stated;

the "intentional harm" which removes an employer from the protection of the exclusivity clause of the Workers' Compensation Act is such harm as it maliciously and specifically directed at an employee, or class of employee *out of which such specific intentional harm the employee receives injuries as a proximate result.*

*Great Western Sugar Co.*, 188 Mont. at 7, 610 P.2d at 720 (emphasis added).

¶22 Sherner claims that such a holding and its progeny are improper because they are based upon our holding in *Enberg*, issued prior to the 1973 Legislature's change in the Act which gave workers an exception to the exclusive remedy clause in § 39-71-411, MCA. Sherner suggests that holding has resulted in inconsistencies in this Court's interpretation of "intentional and malicious act or omission" which have occurred ever since by continuing to follow pre-1973 case law interpreting the Act as it existed at that time and by failing to recognize the significant statutory change made in 1973 by the Montana Legislature. The

10

outcome, Sherner argues, is that the current requirements place a higher burden on an injured worker than the plain language of § 39-71-413, MCA, requires. Sherner insists that on its face, the plain language of § 39-71-413, MCA, only requires a worker to show that the act or omission which caused his injury was "an intentional and malicious" act or omission. Today Sherner urges this Court to correct past inconsistencies and remedy this alleged oversight by applying the "plain meaning" of "intent" and "malice" to the application of § 39-71-413, MCA.

¶23 A review of the body of case law addressing the exclusive remedy clause reveals that there have indeed been inconsistencies in our interpretation of the statutory requirements. In some decisions, we have focused on the nature of the act (*see Millers Mut. Ins. Co. v. Strainer* (1983), 204 Mont. 162, 663 P.2d 338; *Schmidt)* while in others we have focused on the nature of the harm *(see Great Western Sugar Co.; Noonan v. Spring Creek Forest Products* (1985), 216 Mont. 221, 700 P.2d 623; *Blythe v. Radiometer America, Inc.* (1993), 262 Mont. 464, 866 P.2d 218; *Lockwood v. W.R. Grace & Co.* (1995), 272 Mont. 202, 900 P.2d 314).

¶24 Only three years after *Great Western Sugar Co.*, this Court ruled that *Enberg* and *Great Western Sugar Co.* did not turn on the distinction between intentional act and intentional injury, stating "malice can be found where acts are intentional though the consequences are not." *Strainer,* 204 Mont. at 168, 663 P.2d at 341. In *Strainer*, a worker was allegedly injured when he was the object of a practical joke played by Strainer, who

11

squirted toxic smoke into his co-worker's respirator. *Strainer,* 204 Mont. at 164, 663 P.2d at 339. We held that § 39-71-413, MCA, permits the filing of a third party action where acts of an employee are intentional, *irrespective of whether the results of that act were intended. Strainer,* 204 Mont. at 168, 663 P.2d at 341-42 (emphasis added).

¶25 Additionally, we noted that the definition of malice is more expansive than simply intending the consequences of the act, pointing to definitions of malice from Montana case law; "malice is a wish to vex, annoy or injure another person, or an intent to do a wrongful act . . . [we have] also implied malice where the intentional acts of a defendant were committed without justifiable excuse, privilege, or defense." *Strainer,* 204 Mont. at 167-68, 663 P.2d at 341 (*citing Cashin v. Northern Pac. R. Co.* (1934), 96 Mont. 92, 28 P.2d 862, *Poeppel v. Fisher* (1977), 175 Mont. 136, 572 P.2d 912).

¶26 Two years after *Strainer,* we once again returned to focus on the intentional harm element and without overruling *Strainer,* upheld our earlier conclusion in *Great Western Sugar Co.* in *Noonan.* Noonan alleged that the facts in his case showed an intent on the part of his employer to injure him. Reviewing those facts, we stated

> [w]e . . . fail to discern how any of the specific facts could be interpreted to mean harm was specifically directed at Noonan. The facts do establish that the owners of Spring Creek operated a hazardous and dangerous workplace . . . [h]owever, to translate this situation into an inference of tortious intent on behalf of the employer would require a standard of law that this Court has thus far refused to adopt.

*Noonan,* 216 Mont. at 225, 700 P.2d at 625.

12

¶27 However, the writer of this opinion dissented; "[t]he 'intentional harm' we talked about in the *Great Western Sugar Co.* case . . . does not, of course, refer to any degrees of negligent conduct. Nor does it imply such conduct must go so far as to constitute conduct similar to that of assault. A specific intent to cause harm is not necessary." *Noonan*, 216 Mont. at 230-31, 700 P.2d at 629 (Hunt, J. dissenting).

¶28 We again relied on the intentional harm standard in *Blythe,* determining that the appellant had not met the standard set forth in *Great Western Sugar Co.* and *Noonan,* which required that he show intentional harm maliciously and specifically directed at him by his employer. *Blythe,* 262 Mont. at 469, 866 P.2d at 221. Blythe had demonstrated only that his employer knew of the defective and hazardous character of a medical device which Blythe and other employees were required to use. We concluded that he did not state a cause of action which would remove his employer from the protection of the exclusive remedy clause of the Act. *Blythe,* 262 Mont. at 470, 866 P.2d at 222.

¶29 In an attempt to show the facts of his case should fall outside the protection of the exclusive remedy clause, Blythe presented an argument not previously considered by this Court concerning the meaning of "malice." He contended that the definition of "actual malice" in § 27-1-221(2), MCA (applied to the Act through § 1-2-107, MCA) superceded the *Great Western Sugar Co.* "intentional harm" standard. We noted that a case on exclusivity had not been reviewed since § 27-1-221(2) was enacted but that the term "maliciously"as used in *Great Western Sugar Co.,* "has a well-known meaning in Montana." *Blythe,* 262

13

Mont. at 473, 866 P.2d at 224. We pointed out that § 1-1-204(3), MCA, defines "malice" and "maliciously" as "denot[ing] a wish to vex, annoy, or injure another person . . . ," but left off the remainder of the definition "or an intent to do a wrongful act, established either by proof or presumption of law." *Blythe*, 262 Mont. at 473, 866 P.2d at 224; § 1-1-204(3).

¶30 Sherner asserts that this Court erred in its application of only the first portion of the definition of malice provided in § 1-1-204(3), MCA, and like Blythe, urges us to adopt the § 27-1-221(2), MCA, definition as the most appropriate definition of malice for use in § 39-71-413, MCA. Section 27-1-221(2), MCA, provides:

> [a] defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and: (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Section 27-1-221(2), MCA.

¶31 Taking an approach similar to that of Sherner's argument, the appellant in *Schmidt* argued that the plain language of § 39-71-413, MCA, required only that she prove that an employee acted intentionally and maliciously and that the requirement was satisfied by proving her husband was ordered to work under conditions which his employer or supervisor knew created a high probability that he would be injured. *Schmidt,* 286 Mont. at 101, 951 P.2d at 25. She argued that our decisions in *Great Western Sugar Co.* and *Noonan* misapplied the plain language of § 39-71-413, MCA, and should not be followed.

14

¶32 Focusing on the nature of the act, as we had in *Strainer*, we held that the appellant had not established an intentional act with malice which caused injuries to her husband, regardless of whether we applied the definition of malice at § 1-1-204(3), MCA, or § 27-1-221(2), MCA. *Schmidt*, 286 Mont. at 105, 951 P.2d at 28. In acknowledgment of the inconsistencies in the application of the "intentional and malicious act or omission" standard, we stated;

> [w]ithout attempting to reconcile the inconsistencies in our prior decisions, and to further reconcile those decisions with the plain language of § 39-71-413, MCA, we reaffirm our commitment to at least that part of our decision in *Great Western Sugar Co.* which held that allegations of negligence, no matter how wanton, are insufficient to avoid the exclusive remedy of the Workers' Compensation Act.

*Schmidt*, 286 Mont. at 105, 951 P.2d at 28.

¶33 After years of fluctuating between focusing either on the intentional act, or intentional harm, we recently applied a combination of those two standards in *Calcaterra*. The appellant argued that the evidence raised genuine issues of material fact that Montana Resources acted with malice and an intent to harm her husband. *Calcaterra*, ¶ 15. Citing *Lockwood*, a case focusing on "harm," we stated;

> [w]e have held that allegations or evidence that an employer knew its acts created a high degree of harm to an employee are sufficient to meet the intentional act requirement of 39-71-413, MCA. Under [this] approach, however an employee must allege and establish that the employer had actual knowledge that the employee was being harmed; allegations . . . that an employer "had ample reason to know" of the harm being experienced are insufficient.

*Calcaterra*, ¶ 14.

15

¶34 We held that "Montana Resources' knowledge that an employee working 10 feet above the floor on an unsecured ladder without a safety belt and lanyard was risking injury is insufficient to raise a genuine issue of material fact that Montana Resources *directed intentional harm* at [the employee]." *Calcaterra*, ¶ 18 (emphasis added). However, in concluding, we stated that there was no "intentional and malicious act . . . which caused [the employee's] injuries and death." *Calcaterra*, ¶ 20.

¶35 Today, Sherner urges this Court that the case law as a whole does not reflect the statutory language of § 39-71-413, MCA. In response to that claim, we now examine that statute's plain language to determine a standard by which to judge when an act or omission is intentional and malicious. In an effort to construe the statue, this Court must attempt to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. The rules of statutory construction require the language of a statute to be construed according to the plain meaning of the words used. *McClure v. State Compensation Mut. Ins. Fund* (1995), 272 Mont. 94, 98, 899 P.2d 1093, 1096. If the language is clear and unambiguous, then no further interpretation is required. *Stratemeyer v. Lincoln County* (1996), 276 Mont. 67, 73, 915 P.2d 175, 178.

¶36 We first must determine what the Legislature meant when using the word "intentional" in the Act. Because "intentional" is not defined in the Act and the term does not require a technical definition, we construe it according to its plain meaning. "Intentional"

16

is defined as "1. done deliberately; intended. 2. having to do with intention." *The American Heritage Dictionary of the English Language, Third Edition*, 1996.

¶37 While "malicious" is not defined in the Act and has no technical definition, it is defined in two places in the code; §§ 1-1-204(3), MCA, and § 27-1-221(2), MCA. As Sherner points out, our prior case law has resulted in inconsistencies in the definition of malice. Sherner suggests that this Court should adopt the definition of "actual malice" as provided in § 27-2-221(2), MCA. We agree. We conclude that rather than attempting to weave together a patchwork of inconsistent definitions from earlier case law, the appropriate definition of "malice" for use in § 39-71-413, MCA, is that found in § 27-1-221(2), MCA;

> [a] defendant is guilty of actual malice if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and: (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.

Section 27-1-221(2), MCA.

¶38 The term "act" is not defined in the Act and has no technical definition. Therefore, it may also be construed according to its plain meaning. "Act" is "the process of doing or performing something." *The American Heritage Dictionary of the English Language, Third Edition*, 1996. Finally, the term "omission" may similarly be construed according to its plain meaning; "1. the act or an instance of omitting; 2. the state of having been omitted; 3. something omitted or neglected." *The American Heritage Dictionary of the English Language, Third Edition*, 1996.

¶39 Conoco responds that if we apply the plain language doctrine to the statute, then the exception to the exclusive remedy rule would not apply to this case at all because it only refers to causes of action against fellow employees. However, we have held that while the language of § 39-71-413, MCA, provides for a cause of action only against a fellow employee or other servant of the employer who intentionally and maliciously injures an employee, such an action may be brought against the employer as well. *Sitzman,* 221 Mont. at 307-08, 718 P.2d at 659. To fail to hold employers liable in the same manner as their employees by permitting an employer to commit an intentional and malicious act or omission that causes an injury to an employee, and then allowing him to hide behind the exclusivity provision of the Act, would defeat the purpose of the Act.

¶40 Whether it was error for the District Court to grant summary judgment in favor of Conoco.

¶41 Consistent with our holding above, and with the new standard set forth herein applying the plain language of the statute and the definition of "actual malice" found in § 27-2-221(2), MCA, we conclude that there are genuine issues of material fact in the present case, and therefore, summary judgment is not appropriate.

¶42 The Judgment of the District Court dismissing Sherner's complaint against Conoco based upon the award of summary judgment in favor of Conoco is vacated. The claims against Conoco are remanded to the District Court for trial upon the merits and application of the plain meaning of "intentional and malicious act or omission" as set forth in this opinion.

18

¶43    Reversed and remanded.

_____
                         Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
          Justices

19

Justice James C. Nelson specially concurs:

¶44    I write separately as to the point of law discussed in ¶ 39 of our opinion because I believe that it is important to articulate what, I understand, is the underlying rationale and independent jurisprudential basis for our decision on this matter.

¶45    Conoco correctly states that reading the plain language of § 39-71-413, MCA, the "intentional tort" exception only applies to suits against the injured worker's co-employee. Notwithstanding, as our opinion points out, we held in *Sitzman v. Schumaker* (1986), 221 Mont. 304, 718 P.2d 657, that suit could also be brought against the employer. *Sitzman*, 221 Mont. at 307, 718 P.2d at 659.

¶46    Our holding in *Sitzman* flowed as the natural consequence of our decision in *Enberg v. Anaconda Co.* (1971), 158 Mont. 135, 489 P.2d 1036. In *Enberg* we created a common law exception to the exclusive remedy rule for workers injured by the intentional acts of their employers. *Enberg*, 158 Mont. at 137, 489 P.2d at 1037. In 1973, the legislature enacted § 92-204.1, RCM (1947) (the predecessor to § 39-71-413, MCA). This statute created the statutory exception to the exclusive remedy rule for intentional acts and omissions by co-employees. Thus, after 1973, the exception applied to employers via the common law and *Enberg,* and to co-employees via the statute. Importantly, both standards were the same.

¶47    For this reason, *Sitzman,* decided in 1986, did not create a new common law exception to exclusivity; it merely applied "in a similar manner" the rationale of the exception that had already been created in *Enberg*. As this Court did in *Enberg*, the *Sitzman* Court focused on

20

the purpose of the Act and concluded that to give the employer immunity for intentional torts would effectively destroy the *quid pro quo*; grant the employer the right to assault his employees and then hide behind exclusivity; force other employers to subsidize this wrongful conduct; allow the offending employer to benefit from his own wrongdoing; and, thus, defeat the purposes of the Act. *Sitzman,* 221 Mont. at 307-08, 718 P.2d at 659.

¶48 Furthermore, there are good reasons why the exception for intentional and malicious acts and omissions must apply in the same fashion to employers and co-employees alike. In *Madison v. Pierce* (1970), 156 Mont. 209, 478 P.2d 860, we interpreted § 92-204, RCM (1947), which granted employers immunity from common law and statutory negligence actions brought by the injured employee, but allowed third party actions against persons or corporations other than the employer. *Madison,* 156 Mont. at 212, 478 P.2d at 862. In *Madison,* the injured worker was receiving compensation under the Act, but then attempted to sue various corporate officers of her employer, and her foreman. *Madison,* 156 Mont. at 210-11, 478 P.2d at 861-62. The question was whether the statute's explicit grant of immunity to the employer also encompassed a grant of immunity to co-employees--here executive and management personnel. *Madison,* 156 Mont. at 213, 478 P.2d at 862-63. We held that it did. *Madison,* 156 Mont. at 219, 478 P.2d at 866.

¶49 Again, we looked to the purpose of the Act. We stated:

> The broad purpose of the Montana Workmen's Compensation Act is to substitute a system for the payment of medical costs and wage losses to injured employees without regard to fault, for the common law system of legal action by the injured employee against the one whose negligence proximately caused

21

his injury.

*Madison*, 156 Mont. at 213, 478 P.2d at 863. We then went on to explain:

> The principle behind this legislation was that the business enterprise or industry should directly bear the costs of injury to its employees in the same manner as the enterprise has always borne the costs of maintaining and repairing its plant, machinery and equipment. The business enterprise should pass along the costs of maintenance and repair of its human resources, its employees, in the same manner as is done in the case of other production costs, namely in the price at which its product is sold to the public. This underlying purpose finds summary expression in the familiar phrase "the cost of the product should bear the blood of the workman[.]"

*Madison*, 156 Mont. at 213-14, 478 P.2d at 863. Thus, the foundation for the Act is the principle of "enterprise liability"--that is, recognition that the costs of compensating injured workers are, like other production expenses, simply a cost of doing business to be passed on to the public in the price of the product.

¶50 Recognizing this fundamental principle, we then acknowledged the corollary that:

> If section 92-204 were construed to withhold immunity to a co-employee from a negligence action, the cost of injury to an employee of the business would be shifted from the employer, where the Act places it, to a fellow employee, where the Act does not place it. It also would defeat the ultimate payment of injury cost by the public purchasing the product.

*Madison,* 156 Mont. at 215, 478 P.2d at 864.

> Since the employee's acts are the acts of his corporate employer for the purpose of establishing the employer's liability, they are equally so for the purpose of establishing the employee's liability. Liberal construction of the Act in favor of the injured workman does not compel us to ignore the equal rights of his fellow employees, specifically that the employer of a given business enterprise shoulder the costs of injury to his employees without recourse to contribution from coemployees.

22

*Madison*, 156 Mont. at 217, 478 P.2d at 865.

> Montana's Act is founded on the principle of enterprise liability and enterprise immunity. Therefore the contractual liability of the employer and the immunity of the coemployee in tort coexist; the coemployee is a member of the enterprise and not a stranger to the Act; that injury costs are not subject to being shifted around among the members of the enterprise, i.e. employer, employee, and coemployee, but remain solely the obligation of the employer;
>
> . . .

*Madison*, 156 Mont. at 219, 478 P.2d at 866.

¶51 Having thus determined that the Act was founded on the principles of enterprise liability, we then held that the immunity afforded by § 92-204, RCM (1947), extended to co-employees acting in furtherance of the employers' business. *Madison*, 156 Mont. at 219, 478 P.2d at 866. And, as already noted above, § 92-204.1, RCM (1947), enacted by the legislature in 1973, effectively codified *Madison*.

¶52 Returning to the case at bar, this same principle of "enterprise liability" dictates why Conoco's argument that the "intentional tort" exception only applies to suits against the injured worker's co-employee must fail. "[I]njury costs are not subject to being shifted around among the members of the enterprise, i.e., employer, employee, and co-employee, but remain solely the obligation of the employer." *Madison*, 156 Mont. at 219, 478 P.2d at 866. Were the intentional tort exception standards different as to employers and employees, then liability for an intentional and malicious act or omission committed by a co-employee at the direction of the employer and in furtherance of the employer's enterprise, would be

23

shifted from the employer to the co-employee--contrary to the doctrine of enterprise liability, the foundation principle of the Act.

¶53 Accordingly, there is a well-established and independent jurisprudential basis for holding that the intentional tort exception to exclusivity applies to employers. That basis derives from the common law and the doctrine of enterprise liability.

¶54 I concur.

_____
Justice

Justice W. William Leaphart concurs in the foregoing special concurrence.

_____
Justice

Justice Karla M. Gray, dissenting.

¶55    I respectfully dissent from the Court's opinion, which adopts entirely new standards for determining whether the exception to the exclusive remedy provision contained in § 39-71-413, MCA, applies and also adopts the § 27-1-221, MCA, definition of malice. Based on the procedural posture in which this case presents itself, I would do neither and would affirm the District Court.

¶56    Our general rule is that we will not address either an issue raised for the first time on appeal or a party's change in legal theory. *See Day v. Payne* (1996), 280 Mont. 273, 276, 929 P.2d 864, 866 (citations omitted). The rationale underlying this rule of judicial restraint is that "it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *See Day*, 280 Mont. at 277, 929 P.2d at 866 (citation omitted). I would apply these long-standing rules in the present case and conclude that Sherner waived the right to argue both the "plain meaning" of § 39-71-413, MCA, and adoption of the § 27-1-221, MCA, definition of malice--the very matters on which the Court decides this case--by failing to do so in the District Court.

¶57    Conoco moved for summary judgment in the District Court pursuant to this Court's cases interpreting § 39-71-413, MCA, and applying the § 1-1-204(3), MCA, definition of malice. The portion of Sherner's brief in opposition to Conoco's motion which set forth the "substantive law pertaining to actions against employers" was brief--only two pages--and to the point.

¶58    With regard to the exception contained in § 39-71-413, MCA, Sherner's brief first quoted the statute and then observed that we have interpreted that statute to allow an injured employee to bring an action against the employer as well as against a co-employee. The

25

remainder of his argument under § 39-71-413, MCA, only one paragraph long, cited to cases interpreting that statute, including *Calcaterra, Schmidt, Lockwood* and *Great Western Sugar*. No argument was made, even implicitly, that those cases were wrongly decided under § 39-71-413, MCA, or that a "plain meaning" standard should apply.

¶59　The portion of Sherner's brief regarding the substantive law applicable to "malice" also was short. It stated, in its entirety:

> The malice requirement is shown employing § 1-1-204(3), MCA [sic] which defines malice as "a wish to vex, annoy, or injure another person or an intent to do a wrongful act . . . ." Blythe v. Radiometer America, 262 Mont. 464, 866 P.2d 218 (1993). Malice is implied where intentional acts are committed without justifiable excuse, privilege or defense. Poeppel v. Fisher, 175 Mont. 136, 572 P.2d 912 (1977). Malice can be found where the acts are intentional even though the consequences are not. Millers Mut. Ins. Co. v. Strainer, 204 Mont. 162, 167, 663 P.2d 338, 341 (1983).

Clearly, Sherner was relying on the definition of malice contained in § 1-1-204(3), MCA, and our cases interpreting that statutory definition. He did not reference, much less urge adoption of, the definition of malice contained in § 27-1-221, MCA, for which he contends on appeal.

¶60　I cannot join the Court in allowing Sherner to totally repackage his case on appeal by changing his legal theory and raising new legal arguments and then resolving the case on the basis of those new arguments. This approach undermines the proper role of the district courts and this Court, and permits this Court to reverse trial courts on issues never presented to them for initial decision making. I dissent.

_____
Justice

Chief Justice J. A. Turnage:

　　I concur in the dissent of Justice Gray.

_____
Chief Justice