JUSTICE NELSON
concurs and dissents.
¶30 I concur in part of our order and dissent in part. While I would not find a need to define “hostility” for purposes of interpreting § 3-1-804, MCA-the word is not even included in the statute-nevertheless, for the reasons set out by the majority, I agree that the rules for determining hostility in the context of jury selection have no place in resolving the matter at issue. Similarly, and for the same reasons articulated by the majority, I agree with the Court’s conclusion that Goldman Sachs’s motion for substitution was timely filed.
¶31 I dissent from that part of the majority’s order determining that adversity amongst co-parties is required in addition to adversity between plaintiffs and defendants. I conclude that the phrase “each adverse party” as set out in § 3-1-804(1), MCA, does not include the requirement that co-parties be adverse.
¶32 The cardinal rule of statutory construction requires that we simply declare what is in terms or in substance contained in the statute, neither inserting what has been omitted nor omitting what has been inserted. Section 1-2-101, MCA. We must construe the statute according to the plain meaning of the words used, and if the language is clear and unambiguous, then no further interpretation is necessary. Sherner v. Conoco, Inc., 2000 MT 50, ¶ 35, 298 Mont. 401, ¶ 35, 995 P.2d 990, ¶ 35 (citations omitted).
¶33 Assuming the other requirements of the statute are met, § 3-1-804(1), MCA, allows “each adverse party” to peremptorily substitute *297 the presiding judge once. The statute does not require that each defendant (or plaintiff) or that all defendants (or plaintiffs) collectively possess this right of substitution. Rather, the plain and unambiguous language of the statute gives “each adverse party* a right of substitution.
¶34 The majority offer no definition of “adverse party.” While we have not defined this phrase in the context of § 3-1-804, MCA, we have defined what an “adverse party* is for purposes of appeal. We have stated that “[a]n ‘adverse party upon whom a notice of appeal is required to be served is one whose rights may be injuriously affected by a reversal or modification of the judgment from which the appeal is taken.” Reardon v. Gilligan (1949), 122 Mont. 295, 299-300, 202 P.2d 242, 244 (citations omitted). See also Central Mont. Stockyards v. Fraser (1957), 133 Mont. 168, 180, 320 P.2d 981, 988 (“an ‘adverse party. . . is a party who has an interest in opposition to the object sought to be accomplished by the appeal, or a party whose rights may be adversely affected by the reversal or modification of the judgment”). Accord In re Estate of Stoian (1960), 138 Mont. 384, 392, 357 P.2d 41, 46 (citations omitted).
¶35 Since this was the only jurisprudential definition of “adverse party* on the books when the 1987 Court drafted and adopted what is now § 3-1-804, MCA, it is logical that the Court had this definition in mind when it included the phrase in the rule. That is, an “adverse party* is one who is entitled to appeal an adverse judgment. Certainly Goldman Sachs fits within this definition of “adverse party.” Undisputedly, it is a party who has an interest in opposition to the object sought in the litigation and, thus, is a party whose rights may be adversely affected by reversal or modification of an adverse judgment. Goldman Sachs is an “adverse party” as we have defined that phrase in our case law and there is no good reason why it is not an “adverse party” for purposes of exercising substitution rights under § 3-1-804(1), MCA.
¶36 Whether Goldman Sachs is adverse to one or another defendant is beside the point. It is undisputed that Goldman Sachs is adverse to the plaintiffs; that it is a party to this litigation; and that it will ultimately be entitled to appeal an adverse judgment against it. That is all the plain language of § 3-1-804, MCA, requires, nothing more.
¶37 The majority’s reading into the statute the requirement of adversity between co-parties violates the rules of construction aforementioned. The Court has inserted a phrase-“each adverse party (meaning co-parties collectively to the extent they are not adverse)”— which is omitted from the unambiguous statute. The Court has ignored the plain language of the words used-“each adverse party”-as we have *298 previously defined those in our case law. And the Court has constructed this judicial re-write from whole cloth without citation to any authority whatsoever.
¶38 Moreover, while § 3-1-804, MCA, clearly contemplates and provides for lawsuits with multiple parties, there is not one suggestion in the plain language of the statute that co-party adversity is a prerequisite for substitution in cases involving more than one defendant or, presumably, plaintiff. Certainly, if such was the requirement when this Court drafted and adopted this statute in 1987 or when we subsequently amended it, appropriate language could have been included. More to the point, if this Court now intends that the requirement of co-party adversity be included in the statute, then the appropriate mechanism is to amend the rule pursuant to our authority under Article VII, Section 2(3) of the Montana Constitution; publish the amendment providing for an effective date; and then go on from there with the new requirement in place. Jerking the rug out from under parties in a pending lawsuit violates basic fairness, if not due process.
¶39 Furthermore, as Goldman Sachs argues, inserting into the statute a requirement for co-party adversity makes the exercise of the right of substitution not a right, but a race. In a multiple-defendant case, absent proof of co-party adversity, the first defendant to exercise its right of substitution under § 3-1-804, MCA, precludes any other defendant from exercising that right, even though defendant number two timely files its motion for substitution in accordance with the provisions of the statute. If the plaintiff'serves defendant number two after defendant number one’s substitution, defendant number two is out of luck, even though it exercised its first opportunity under the statute to substitute the judge.
¶40 Obviously, the opportunities for gamesmanship in service of process and in use of the fictitious name statute, § 25-5-103, MCA, abound. Under our new co-party adversity rule, a plaintiff can prevent a defendant from exercising its substitution right by merely filing a complaint against a named defendant and a John Doe; by effecting service on the named defendant immediately; and by then waiting 30 days to amend the first complaint and to substitute the named party for the John Doe. This may be a windfall for the plaintiffs bar, but tilting the playing field is not supposed to be what our procedural rules are about. See Haugen v. Blaine Bank (1996), 279 Mont. 1, 12-13, 926 P.2d 1364, 1370-71 (Nelson, J., concurring).
¶41 Finally, I will also note that district court judges frequently complain that substitutions under § 3-1-804, MCA, are too easy and create problems for the substituted judge in finding another jurist to *299 take his or her place, not to mention the travel and disruption of business in two courts that substitution often involves. It appears that we have now ameliorated that problem to some extent. On the other hand, many members of the practicing bar view their right of substitution as being an important, if not sacred, opportunity to assure their client’s right to a fair trial. Our decision here diminishes that right substantially.
¶42 For all of the foregoing reasons, I dissent from our insertion of a co-party adversity rule into the otherwise plain and unambiguous language of § 3-1-804, MCA. I would reverse the trial court’s decision.